OPINION OF THE COURT
Leonard A. Weiss, J.
I. INTRODUCTORY QUESTION AND BACKGROUND
Has petitioner, Charles Hamill (petitioner or Hamill) seasonably initiated this CPLR article 78 proceeding to review the failure of New York State Department of Motor Vehicles Commissioner James P. Melton (respondent) to reinstate Ha *335 mill to his position as permanent file clerk with the Department of Motor Vehicles?
Petitioner, having served in numerous temporary assignments with various State agencies, finally attained the status of a permanent employee in 1973. In March of 1976, petitioner was assigned to the position as permanent file clerk in the Department of Motor Vehicles. This dispute arises from action commenced in January of 1977 by respondent when it informed petitioner that his work performance was unsatisfactory in the calendar year 1976. On May 5, 1977, petitioner received a second notice that his work remained unsatisfactory and that his failure to maintain an acceptable production rate on his job might result in his dismissal. On June 22, 1977, petitioner was served with a notice of discipline. A disciplinary hearing was commenced following service of the discipline notice but was recessed prior to the taking of any testimony. At that hearing, held on June 28, 1977, personnel from the Department of Motor Vehicles, Mr. Hamill, and personnel from the Civil Service Employees Association (CSEA), were present to discuss the alternatives to discipline for Mr. Hamill. Allen D. Fine (the Director of Agency Manpower Management for the Department of Motor Vehicles), by affidavit sworn to December 27, 1978, states that at the June 23, 1977 meeting these alternatives were explored to the discipline of Mr. Hamill "(1) re-assignment to different duties, (2) transfer to another agency, (3) resignation, (4) disability retirement.” CSEA, believing the petitioner would not win the disciplinary proceeding, advised petitioner to file for a disability retirement — if the respondent, Department of Motor Vehicles, would drop the disciplinary charges pending the termination of the disability retirement application. Petitioner initially refused to accept the agreement to file for disability retirement and insisted upon his right to have a disciplinary hearing. In August, 1977, petitioner apparently changed his mind and filed an application for ordinary disability retirement supposedly with the understanding that his application would only be effective in the event he was unsuccessful in gaining reinstatement after the disciplinary hearing. By letter dated March 22, 1978, petitioner was notified by the Director of Personnel for the New York Department of Motor Vehicles that the New York State Employees Retirement System approved petitioner’s application for ordinary disability retirement and that his retirement would become effective on *336 March 30, 1978. By letter dated March 31, 1978 Allen D. Fine acting for the Department of Motor Vehicles, informed Mr. Hamill that the June 27, 1977 notice of discipline was removed from his personal history file pursuant to an understanding reached between Mr. Hamill’s CSEA representative and Mr. Fine on July 12, 1977. By letter dated March 28, 1978, petitioner informed the New York State Employees Retirement System that he was unaware that the form he completed and filed with the Retirement System on August 12, 1977, was an application for ordinary disability retirement. By letter dated April 7, 1978, Gregory O. Childs (Assistant Director, Retirement Benefits, New York State Employees Retirement System) informed Mr. Hamill that it was not possible for Mr. Hamill to withdraw his application for disability retirement because that application had already been approved by the Employees Retirement System.
By letter dated July 18, 1978, Mr. Hamill was informed by the Federal Social Security Administration that based upon examinations and evaluations of physicians and other trained disability evaluation personnel employed by New York State, Mr. Hamill was not disabled within the meaning of Federal law. By letter dated August 16, 1978, petitioner’s counsel informed respondent Melton that, based upon examination and the professional opinion of his personal physician, petitioner believed that he was able to work, and was making reapplication to his file clerk position with the Motor Vehicle Department. By letter dated August 22, 1978, Paul E. Feld (Director of Personnel for the Department of Motor Vehicles) informed petitioner’s attorney that the department would not reinstate Mr. Hamill in the exercise of its discretion under civil service rules because Mr. Hamill’s performance was unsatisfactory.
In sum, petitioner was offered the alternative of either a disability retirement or dismissal. Acting on an apparent misunderstanding, petitioner filed the application for a disability retirement, and now seeks reinstatement to his permanent position without any restrictions on his seniority privileges and all back pay which he has been denied from March 30, 1978 (the date he was terminated) to the present.
II. DECISION
A. Failure to Exhaust Administrative Remedies
Petitioner having filed for, and having been granted, ordi *337 nary disability retirement is officially retired from State civil service. Respondent suggests that petitioner’s failure to timely file for reconsideration of the "favorable” decision to grant him ordinary disability retirement within four months, as required by subdivision d of section 74 of the Retirement and Social Security Law, prevents petitioner’s now seeking reinstatement and back pay in this article 78 proceeding.
New York courts clearly require petitioner to exhaust his administrative remedies before pursuing relief in court through an article 78 proceeding; see, e.g., Young Men’s Christian Assn. v Rochester Pure Waters Dist. (37 NY2d 371, 375) where the court said: "The doctrine of exhaustion of administrative remedies requires 'litigants to address their complaints initially to administrative tribunals, rather than to the courts, and * * * to exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts’ ” (emphasis supplied). (Also, see, CPLR 7801, subd 1; Matter of Flemming v Cagliostro, 53 AD2d 187; and Rodriguez v City of New York, 55 AD2d 532, 533.) The court would be inclined to accept the respondent’s argument and dismiss the petition for failure of the petitioner to request a hearing of the determination by the Comptroller in timely fashion under subdivision d of section 74 of the Retirement and Social Security Law, if it was satisfied that petitioner was fully informed of the legal effect of his filing an application for disability retirement.
There is a countervailing consideration here which dictates a somewhat different result.
B. Impairment of Reputation
A permanent State employee with almost 20 years of service deserves all the consideration the law has to offer. Certainly he deserves not to find himself on ordinary disability retirement, if he is able to work, especially where that retirement came about under the cloud of charges of incompetence which may stay with him into the economic marketplace and the larger community. Such a disability retirement is analogous to a dishonorable discharge with pay. Given that the monetary allowance available under disability retirement may not be sufficient to sustain petitioner, the court is inclined to provide petitioner with the opportunity to challenge the incompetence charges in a hearing.
*338 The question now becomes what type of hearing is a retired employee entitled to. The answer is that a retired employee is entitled to no Civil Service Law section 75 hearing until he is first able to show that the reason for his retirement — medical disability — no longer exists. To gain the right to a Civil Service Law section 75 hearing petitioner must first demonstrate his health has improved sufficiently so that he is no longer eligible for a disability retirement. This he can only do in a hearing pursuant to subdivision d of section 74 of the Retirement and Social Security Law.
Of course the respondent would argue that petitioner’s counsel’s withdrawing petitioner’s timely request for a hearing now prevents petitioner from having the hearing which was originally scheduled for August 14, 1978.
This argument the court will not accept because it will not let petitioner’s right to a hearing be thrown to the wind by a misguided act . of petitioner’s counsel. Petitioner’s counsel withdrew his request for a hearing because counsel did not believe the hearing would have the end result of gaining reinstatement and back pay for petitioner. Apparently the senior attorney for the Employee’s Retirement System who advised petitioner’s counsel did not inform him that to establish the right to a Civil Service Law section 75 hearing, petitioner would first have to establish improvement in his health so that he will be employable in a Retirement and Social Security Law (§ 74, subd d) hearing.
A senior attorney of the Employees Retirement System, as any New York State attorney, has an obligation, before rendering advice over the telephone which may misguide private counsel, to research the law and provide a written opinion backed by appropriate authority. This court holds that petitioner’s counsel’s withdrawing his original timely April 21, 1978 request for a hearing under subdivision d of section 74 of the Retirement and Social Security Law is a nullity.
Petitioner is directed, if so advised, to request the Retirement and Social Security Law (§ 74, subd d) hearing he should have had in August within 20 days following entry of the order upon this decision. The cadre of medical experts available to the Comptroller under section 74 (subd b, par 1; subd d; subd e, par 2) of the Retirement and Social Security Law should be able to determine if petitioner’s health has improved sufficiently to remove him from ordinary disability retirement and put him back to work. The hearing officer *339 should, if so advised, take administrative notice of the fact that medical specialists employed by New York State for the Social Security Administration have certified petitioner sufficiently healthy so that he cannot qualify for Federal Social Security disability.
All other requests for relief are denied.